UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| BMO HARRIS BANK, N.A., | ) | |
|---|---|---|
| | ) | Case No. 2:16-cv-60 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Clifton L. Corker |
| CUSTOM DIESEL EXPRESS, INC. and JOHN GRIFFITHS, | ) ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiff BMO Harris Bank, N.A.'s ("BMO") motion for summary judgment. (Doc. 18.) For the reasons stated hereafter, BMO's motion will be **GRANTED**.

## I. BACKGROUND

The facts in this case are largely undisputed. BMO is a national banking association and is successor-in-interest to loan agreements entered into between non-parties and Defendant Custom Diesel Express, Inc. ("Custom Diesel"). (Doc. 1, at 1, 4; Doc. 20-1, at 1–2.) In total, Custom Diesel entered into four loan agreements to finance its purchase of certain equipment, including tractors and trailers. (Doc. 1, at 1, 4; Doc. 20-1, at 1–2.) Defendant John Griffiths guaranteed each of the loan agreements. (Doc. 1, at 4; Doc. 20-1, at 2.) Additionally, as part of the loan agreements, Custom Diesel granted the non-parties a security interest in the equipment purchased with funds obtained through the loan agreements. (Doc. 1, at 4; Doc. 20-1, at 2.) Effective December 1, 2015, the non-parties assigned their rights, titles, and interests to their

accounts with Custom Diesel, including the loan agreements, Griffiths's guarantees, and its security interests in the equipment, to BMO. (Doc. 1, at 4; Doc. 20-1, at 2.)

Custom Diesel failed to make payments due under the terms of one of the loan agreements on August 1, 2015, and on the remainder of the loan agreements on September 1, 2015, thereby rendering them in default. (Doc. 1, at 5; Doc. 20-1, at 2.) Custom Diesel has also failed to make any subsequent payment due. (Doc. 1, at 5; Doc. 20-1, at 2.) As a result of Custom Diesel's default, and pursuant to the terms of the loan agreements, BMO accelerated the entire amounts due under the loan agreements, making the balances owed on the loan agreements immediately due and payable. (Doc. 1, at 5; Doc. 20-1, at 2.) Custom Diesel has subsequently failed to pay balances owed under the loan agreements. (Doc. 1, at 6; Doc. 20-1, at 2.) Custom Diesel and Griffiths do not dispute that they have breached the terms of the loan and guarantee agreements. (*See* Doc. 20-1, at 1–4.)

Based on its security interests in the equipment, BMO recovered possession of the equipment and proceeded to sell some, but not all, of it. (Doc. 19-1, at 6; Doc. 20-1, at 2.) Specifically, as of the date BMO filed its motion for summary judgment, it had not sold the equipment purchased in connection with the fourth loan agreement. As of February 1, 2017, BMO asserts that, after applying the net proceeds from the sales of the repossessed equipment, $291,369.45 remains owed by Custom Diesel and Griffiths. (Doc. 19-1, at 7–8.) BMO asserts that this amount reflects the remaining unpaid principal plus accrued interest as of February 1, 2017, late fees, and costs of recovery and the sale of the equipment, which BMO is entitled to under the terms of the loan agreements. (*Id.*) This amount, however, does not include attorneys' fees and costs, to which BMO is also entitled under the terms of the loan agreements. (*Id.*)

While Custom Diesel and Griffiths do not dispute that they have breached the loan agreements, they dispute BMO's calculation of the amount owed as a result of their breaches. Specifically, Custom Diesel and Griffiths assert that BMO failed to sell the equipment covered by the first, second, and third loan agreements in a commercially reasonable manner. (Doc. 20-2, at 1–2.) In a declaration, Griffiths avers that: (1) he is familiar with the values of the equipment covered by the loan agreements based on his experience in the trucking industry; and (2) the equipment sold in connection with the first, second, and third loan agreements was "worth as much or more that the amounts due and owing under each respective [loan agreement] at the time they were sold." (*Id*.) Griffiths further avers that the equipment covered by the fourth loan agreement, which BMO has not yet sold, "is worth approximately the same amount that is due and owing under the [fourth] loan agreement." (*Id*. at 2.)

In response to Griffiths's averments, BMO has submitted evidence regarding its sale of the repossessed equipment covered by the first, second, and third loan agreements. Specifically, in a declaration, Micki Koepke, a litigation specialist for BMO, details its process for repossessing, repairing, advertising, and reselling the collateral that secured the first, second, and third loan agreements, including that BMO: (1) notified Custom Diesel and Griffiths of its sale of the collateral; (2) afforded Custom Diesel and Griffiths the opportunity to redeem the collateral prior to sale; (3) evaluated each of the units of collateral independently to determine the best method to mitigate its damages; (4) sold the collateral by unit, rather than in bulk, to maximize resale value; (5) advertised nationally, in print, digital, and other media for several months; (6) invested resources to repair certain collateral; (7) negotiated private sales for certain collateral; and (8) offered certain collateral for public auction by a well established industrial engineer that routinely buys and sells commercial vehicles through multiple selling platforms.

3

(Doc. 22-1, at 9–12.) As it relates to the equipment repossessed in connection with the fourth loan agreement, Koepke avers that that BMO is currently advertising and seeking to sell the equipment, but it has not yet received a reasonable offer. (*Id*. at 11–12.) In the event BMO receives net proceeds from selling or otherwise disposing of the equipment covered by the fourth loan agreement, it will credit the amount of the net proceeds to any judgment amount entered against Custom Diesel and Griffiths. (*Id*. at 11–12.)

BMO initiated the present action on March 25, 2016. (Doc. 1.) In its verified complaint, it asserts claims against Custom Diesel and Griffiths for, among other things, breach of contract. (*Id*.) BMO now moves for summary judgment on its claims against Custom Diesel and Griffiths. (Doc. 18.)

## II. STANDARD OF LAW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon

the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III.   ANALYSIS

In opposing BMO's motion for summary judgment, Custom Diesel and Griffiths primarily argue that BMO's calculation of the amounts owed under the loan agreements are incorrect. Specifically, Custom Diesel and Griffiths argue that BMO failed to sell the equipment covered by the first, second, and third loan agreements in a commercially reasonable manner, thereby collecting far less than the actual value of the equipment. (Doc. 20, at 2–3; Doc. 20-1, at 1–2.)

Custom Diesel and Griffiths have failed to demonstrate that genuine issues of material fact remain as to whether BMO's sale of the repossessed equipment was commercially reasonable. Under Texas and Utah law,[1]

> Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

---

[1] Two of the loan agreements provide that they are governed by Utah law, and two of the loan agreements provide they are governed by Texas law. (Doc. 1-1, at 5, 11, 17; Doc. 1-2, at 5.)

Tex. Bus. & Com. Code Ann. § 9.610(b) (West 2015); Utah Code Ann. § 70A-9a-610(2) (West 2016). In determining whether creditor's conduct was commercially reasonable, Texas and Utah law further provide:

> (a) The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.
>
> (b) A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>
>> (1) in the usual manner on any recognized market;
>>
>> (2) at the price current in any recognized market at the time of the disposition; or
>>
>> (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

Tex. Bus. & Com. Code Ann. § 9.627 (West 2015); Utah Code Ann. § 70A-9a-627 (West 2016). Accordingly, "[p]roof that a greater amount could have been obtained for the collateral by its disposition in a different method is not sufficient to preclude a showing of commercial reasonableness," but a "low sales price suggests the court should scrutinize carefully all aspects of the disposition to [e]nsure each aspect was commercially reasonable." *Whitney Nat'l Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, 516 F. Supp. 2d 802, 811–12 (S.D. Tex. 2007); *see also Brigham Truck & Implement Co. v. Fridal*, 746 P.2d 1171, 1172–73 (Utah 1987) ("The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner."). While determination of whether sale of collateral is commercially reasonable is typically a fact question, summary judgment remains appropriate if there are no genuine issues of material fact and the lender establishes that it is entitled to

judgment as a matter of law. *Whitney Nat'l Bank*, 516 F. Supp. 2d at 811; *Brigham Truck & Implement Co.*, 746 P.2d at 1173.

In this case, Griffiths's averments that BMO collected less than the actual value of the equipment it sold is not sufficient to create a genuine issue of material fact as to whether BMO disposed of the repossessed equipment in a commercially reasonable manner. As detailed in Koepke's affidavit, BMO: (1) notified Custom Diesel and Griffiths of its sale of the collateral; (2) afforded Custom Diesel and Griffiths the opportunity to redeem the collateral prior to sale; (3) evaluated each of the units of collateral independently to determine the best method to mitigate its damages; (4) sold the collateral by unit, rather than in bulk, to maximize resale value; (5) advertised nationally, in print, digital, and other media for several months; (6) invested resources to repair certain collateral; (7) negotiated private sales for certain collateral; and (8) offered certain collateral for public auction by a well established industrial engineer that routinely buys and sells commercial vehicles through multiple selling platforms. (Doc. 22-1, at 9–12.) Neither Custom Diesel nor Griffiths disputes or controverts these facts; rather, Griffiths simply avers that the equipment "could not have been sold in a commercially reasonable manner as the sales prices were too low and a commercially reasonable sale would have resulted in prices that reflected the actual values of the [equipment]." (Doc. 20-2, at 2.) Under Texas and Utah law, however, the fact that a better price may have been obtained is insufficient to demonstrate BMO's sales were not made in a commercially reasonable manner. *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 602 (Tex. 2010) ("[A] satisfactory price is not necessarily the highest price, and it is recognized that secured creditors frequently sell in the low end of wholesale markets.") Accordingly, because Custom Diesel and Griffiths have failed to demonstrate that genuine issues of material fact remain as to whether BMO's disposed of the

equipment in a commercially reasonable manner, the Court will **GRANT** BMO's motion for summary judgment.[2]

IV. CONCLUSION

For the reasons stated herein, BMO's motion for summary judgment (Doc. 18) is **GRANTED**.

**A SEPARATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[2] In their response, Custom Diesel and Griffiths also contend that summary judgment is inappropriate because BMO is seeking the entire outstanding balance on the equipment covered by the fourth loan agreement, even though it is in possession of the equipment and is not attempting to sell it in a commercially reasonable manner. Custom Diesel and Griffiths, however, fail to provide any evidence to support their contention that BMO is not attempting to sell the equipment in a commercially reasonable manner. Conversely, in Koepke's affidavit, he avers that BMO: (1) is currently attempting to sell the equipment but has not yet received a reasonable offer and (2) will credit the amount of net proceeds derived from the sale of the equipment to any judgment amount entered against Custom Diesel and Griffiths. Because Custom Diesel and Griffiths have not demonstrated a that a genuine issue of material fact exists, and because BMO is permitted to simultaneously "reduce a claim to judgment, foreclose, or otherwise enforce the claim" under Texas law, which governs the fourth loan agreement, Custom Diesel and Griffiths have failed to demonstrate BMO is not entitled to summary judgment. Tex. Bus. & Com. Code Ann. § 9.601(a), (c) (West 2015).